UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINE BUMP,

      Plaintiff,

v.                 5:15-CV-1077
                 (GTS)
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON<br>  Counsel for Plaintiff<br>126 North Salina Street, Suite 3B<br>Syracuse, NY 13202 | STEVEN R. DOLSON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>– REGION II<br>  Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | KRISTINA D. COHN, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

  Currently before the Court, in this Social Security action filed by Christine Bump ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 12.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on August 15, 1965.  Plaintiff has a tenth grade education, obtained a General Educational Development (GED) certificate, and has past work as a waitress and a warehouse worker.  Generally, Plaintiff's alleged disability consists of deformity in the lower back, neck problems, knee problems, and insomnia.

   B.   **Procedural History**

On August 14, 2012, Plaintiff applied for Disability Insurance Benefits, alleging disability beginning January 1, 2012.  Plaintiff's application was initially denied on November 19, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On August 26, 2013, Plaintiff appeared in a video hearing before the ALJ, John Murdock.  (T. 31-63.)  On February 25, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 10-30.)  On July 10, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

   C.   **The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 15-25.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016, and has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date.  (T. 15.)  Second, the ALJ found that Plaintiff's L5-S1 grade I spondylolisthesis disc bulge is a severe impairment, but that Plaintiff's hyperlipidemia, atypical chest pain, neck problems, knee problems, insomnia, history of ulcer, depression, and panic disorder are not severe impairments.  (T. 16-17.)  Third,

the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 18-19.) The ALJ considered Listings 1.02 and 1.04. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. 404.1567(b) except never climbing ladders/ropes/scaffolds, crouching, or crawling, and no more than occasional climbing stairs/ramps, balancing, stooping, or kneeling. The claimant should avoid vibration and hazardous machinery or heights." (T. 19-22.) Fifth, the ALJ found that Plaintiff could perform her past relevant work as a waitress. (T. 22-23). Sixth, in the alternative, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T. 23-24.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff argues that the ALJ committed reversible error by discounting mental opinions from acceptable medical sources, without adequate explanation or support, in determining Plaintiff's mental RFC. (Dkt. No. 10, at 1, 4-7 [Pl.'s Mem. of Law].) More specifically, Plaintiff argues that the ALJ improperly rejected the uncontradicted mental opinions of consultative psychiatric examiner Christina Caldwell, Ph.D., and State agency psychiatrist J. Echevarria, M.D., in determining that Plaintiff had no mental limitations. (*Id.*)

Generally, Defendant argues that the ALJ properly assessed the severity of Plaintiff's mental impairments and Plaintiff's mental RFC. (Dkt. No. 12, at 4-10 [Def.'s Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906

F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Erred in Evaluating the Mental Opinions and Determining Plaintiff's Mental RFC

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10, at 4-7 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999). "Work-related mental activities generally required by competitive, remunerative work include the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. § 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from

other sources to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, such as a consultative examiner, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 404.1527(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Here, the record contained opinions of Plaintiff mental work-related abilities and limitations from the following two acceptable medical sources: (1) consultative psychiatric examiner Dr. Caldwell, and (2) State agency psychiatrist Dr. Echevarria. (T. 420-23, 430-47.)

### i. Consultative Psychiatric Examiner Dr. Caldwell

On November 2, 2012, Dr. Caldwell examined Plaintiff and provided an opinion of her work-related mental abilities and limitations. (T. 420-23.) Dr. Caldwell opined that Plaintiff could follow and understand simple directions and instructions; maintain attention and concentration; maintain a regular schedule; and learn new tasks. (*Id.*) Dr. Caldwell opined that Plaintiff was limited in her ability to perform simple tasks independently; make appropriate decisions; relate adequately with others; and appropriately deal with stress. (*Id.*)

Upon examination, Dr. Caldwell observed that Plaintiff's affect was dysphoric and anxious, her mood was dysthymic, her judgment was fair, and her insight was fair to poor. (T. 420-21.) Dr. Caldwell noted that Plaintiff was hospitalized for a suicide attempt in 1998. (T. 420.) Dr. Caldwell diagnosed Plaintiff with major depressive disorder and panic disorder. (T. 422.)

### ii. State Agency Psychiatrist Dr. Echevarria

On November 16, 2012 Dr. Echevarria reviewed Plaintiff's medical records and performed a psychiatric review technique and mental RFC assessment of Plaintiff's work-related abilities and limitations. (T. 430-47.) In Section I of the mental RFC form, Dr. Echevarria assessed that Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to

8

changes in the work setting; and set realistic goals or make plans independently of others. (T. 444-45.) In the Section II "remarks" portion of the mental RFC form, Dr. Echevarria referenced the psychiatric review technique in the file where he appeared to adopt Dr. Caldwell's RFC assessment. (T. 17, 442, 445. )

In determining that Plaintiff had no severe mental impairments and no mental work-related limitations, the ALJ afforded little weight to the mental opinions of Dr. Caldwell and Dr. Echevarria. (T. 17.) However, in rejecting the opinions of Dr. Caldwell and Dr. Echevarria, the ALJ failed to cite, and the record does not contain, an alternative medical opinion of Plaintiff's mental abilities and limitations.

The ALJ is not permitted to substitute his own expertise or view of the medical proof for any competent medical opinion. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord Rosa,* 168 F.3d at 79 (stating that "'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'") (quoting *McBrayer,* 712 F.2d at 799); *Balsamo,* 142 F.3d at 81 ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him . . . . In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings."). Therefore, the Court need not address whether Dr. Caldwell or Dr. Echevarria's opinions bound the ALJ under the regulations due to the ALJ's aforementioned omission. *See Balsamo*, 142 F.3d at 81 (finding that the Court need not address whether the physicians' opinions bound the ALJ under the regulations because the ALJ did not cite *any* medical opinion to dispute the physicians' conclusions as to the plaintiff's work-related limitations.)

Moreover, even if the ALJ's assessment of Dr. Caldwell and Dr. Echevarria's opinions was proper, the ALJ's RFC determination that Plaintiff had no mental limitations was not supported by substantial evidence based on the current record. *See id.*, at 81-82 (finding that the ALJ's RFC determination was not supported by substantial evidence in the absence of a medical opinion indicating that the plaintiff could perform the work activities in the ALJ's RFC determination); *House v. Astrue*, 11-CV-0915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (holding that remand was necessary where there was no medical source opinion supporting the ALJ's RFC determination).

The Court recognizes that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House*, 2013 WL 422058, at *4 (internal citation and quotation marks omitted). However, that is not the case in the present matter. The Social Security Rulings ("SSRs") underscore the highly complex and individualized nature of mental impairments, which may impact both exertional and nonexertional work functions. *See, e.g.*, SSR 96-8p, at *6 ("[E]ven though mental impairments usually affect nonexertional functions, they may also limit exertional capacity by affecting one or more of the seven strength demands. For example, a mental impairment may cause fatigue or hysterical paralysis."); SSR 85-15, 1985 WL 56957, at *5 (Jan. 1, 1985) ("Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult.").

For these reasons, remand is necessary for the ALJ to reassess the opinions of Dr. Caldwell and Dr. Echevarria. As appropriate, the ALJ may also recontact Dr. Caldwell and/or Dr. Echevarria to resolve any ambiguity or conflict in their opinions or to request additional information. Remand is also required for the ALJ to (1) reevaluate Plaintiff's mental RFC; (2) perform a new credibility analysis; and (3) reassess whether Plaintiff can perform her past relevant work or other existing work based on a proper assessment of the mental opinion evidence and in light of any new medical evidence obtained.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: October 28, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge